BNSF Railway v. TN Dept of Revenue and others, arguments not to exceed 20 minutes to be shared by the plaintiffs, 20 minutes for the defendants, Mr. McBride for the appellants. Good morning. Good morning, your honor. May it please the court, I'm James McBride. I'm going to be making the argument on behalf of all the railroads this morning that we are consolidated. Very good. We will not be splitting time. I would ask that we reserve five minutes for rebuttal. Very well. If we can, in consistence with the court's admonition this morning, I'm assuming the court has read our briefs, and I'm not going to spend a lot of time going over all of the background information, which there is a lot in this case, except to say clearly that we are here on the denial of a preliminary injunction. So we're not here to decide the merits of the case or whether we prove the merits of the case. We're simply talking about the denial of a preliminary injunction. And because this is a challenge to a brand new tax in Tennessee, a tax that is only imposed on railroads and is only designed to get at railroads, this challenge is made pursuant to 49 U.S.C. section 11501, which is the codification of section 306 of the 4R Act. Under that Act, Congress authorized the courts to grant injunctive and mandatory relief, and because they did that, we don't have to make a showing of the four equitable criteria. We only have to show there's reasonable cause to believe a violation of the statute has occurred. And this court decided that in the CSX case. I'm going to move quickly to what this case is really about from our standpoint and hopefully put it in context so the court can understand what the district court ruled and how that's wrong both as a matter of law and in terms of some erroneous factual determinations. One fact cannot be denied, and that is this new Tennessee Transportation Fuel Equity Act. And I have a hard time saying equity when I talk about that act. It applies only to railroads. It imposes a tax only on railroads, and it imposes a tax only on railroading activity. It imposes a tax on the dyed diesel fuel that railroads use to run their locomotives. I can't think of a more targeted singling out tax. Why don't you just switch to non-dyed? Well, we've got an affidavit in the court. This argument has been made by Tennessee, and it represents a complete misunderstanding of how this works and what goes on with respect to the taxpayers with this. It's a misunderstanding of the way the fuel uses taxes work. We have a system that we've had since 1934. Tennessee's had taxes since 1941 that are designed to fund the highway system in this country. And there is a big federal tax of over 24 cents a gallon on that. Every state in the union has a tax on diesel fuel dedicated to the highway fund. And quite frankly, we have a chart in one of the addendums in our brief that shows what those taxes are, and some of them in Connecticut as high as 50 cents. And here's why we don't do that, Judge Tarnow. If we bought clear diesel fuel, and we have an affidavit that's in the brief, or that's in the record in this case, if we bought clear diesel fuel, we would have to pay, because when you buy clear diesel fuel, you have to pay all the taxes. You have to pay all the state taxes and all the federal taxes. Now, the argument is, well, we could get that back. We could get that federal tax back. We have an affidavit that shows the way the industry works. Locomotive holds about 4,500 gallons of diesel fuel, and it goes a long way on that. It can run 1,500 miles maybe on that. So if we were going to use clear diesel fuel in Tennessee to avoid this tax, it wouldn't make any difference because we'd be paying the full 17 cents a gallon on that. And we don't say that's right. But we'd have to buy clear diesel fuel everywhere. The name plaintiff in this case is Burlington Northern. It purchases every year 1.4 billion gallons of diesel fuel. The testimony is that if we did that, we would be out for federal tax purposes about $85 million forever because of the quarterly payments that would be made, and we'd always be on a lag. And we'd have to pay 24 cents a gallon to the federal court, and nobody would do that. And besides, we wouldn't want to do it anyway. All the other states, we'd have to pay all the other states, some of which we could get back, some of which we couldn't. Texas has a provision that says after, you know, if you keep buying clear diesel fuel and claiming you're using it off the highway, you can't get that back. And really that doesn't solve the problem because we would still pay the 17 cent a gallon tax. And I'm going to talk about why that doesn't work and why we shouldn't be paying. All the other motor carriers, and I understand they're not using diesel fuel. The trucks that are going on the road, they're not using diesel fuel. They're using clear, but they're paying the 17 cent tax. And so I'm having difficulty with the whole concept that the railroads are singled out and they're being the victims of discrimination because of this act because clearly the railroad is not having to pay some taxes that other motor carriers are having to pay. And so I haven't found the comparable class here that you're arguing about. Judge Donald, let's talk about that because I think that's important and that's the crux of the case. You have to look at the use to which these taxes are being put. And Congress knew about that. Why do you have to look at the use though? I know you say you don't use the, the railroads don't use the roadways. But as taxpayers, we don't get to decide. I mean, I don't decide whether Tennessee uses my portion of the tax for road upkeep or whatever. So why is that a critical issue for the railroad? Well, here's why it's a critical issue, and we need to be very clear about this. Congress for a very long time, certainly back as far as the 1940s, recognized that there was an imbalance in the way states and federal governments tax the various modes of transportation. And in the 1960s, early 1960s, the Commerce Commission asked to have a study of national transportation policy done to look at and see the way that the federal government and the state governments imposed taxes on the modes of transportation and whether any of those modes of transportation were being discriminated against. And in a very seminal report called the Doyle Report, we started... This is the history for our act, is that what we're going to? Well, I'm only going to the history, Your Honor, to show, Judge Griffin, to show... You say you've got limited time here. Well, I understand, but Judge Donald says, why does this make a difference? Well, it makes a difference because in terms of national transportation policy, that study commission said, look, the fact that the railroads have to build their own infrastructure, they have to pay taxes on their infrastructure, puts them at a huge competitive disadvantage to the trucks and the water carriers, because the water carriers pay nothing for their infrastructure, to the trucks because the trucks only pay a user charge. And that user charge, which are the taxes we're talking about, the 17 cents a gallon, the federal tax, the trucks only pay those taxes, and for that, for that, the trucks get their public highways. And that's at page 449 and 450 of the Doyle Report, so Congress was cognizant of the fact that this was discriminatory and they said, look, the taxation of the railroad right-of-way is a unique burden that the railroads pay and puts them at a competitive disadvantage to the railroads. And in the Doyle Report, they said... They don't get favored status under the act, they just cannot be discriminated against. Absolutely, they can't be discriminated against, but let's talk about... And here, it's hard for me to see how they're discriminated against, at least as to the motor carriers. The motor carriers pay 17 cents, the railroads pay 17 cents. Your argument is, well, where the money goes makes all the difference because the money that the motor carriers goes to the highway fund, this, I guess, just goes to the general treasury of Tennessee. Would there be no discrimination if the 17 cents that was taxed against the railroads went to the highway fund? Would that be the end of your case? Oh, if... Even though you don't use the highways? Oh, our case would be stronger. What happens here... Oh, it would be stronger, okay. Of course, look... I think... Let me... What does it matter where it goes or how it's used? Some funds of state government are slush funds anyway, and even though they go into a fund, they're not used, they go to the general fund, and if we start going into the funding, the purpose, the use of these taxes, I mean, we're going to have litigation forever because the governments often don't use funds what they ought to use. But discrimination, I'm just looking at the amount of money, and it's hard for me to say if you are taxed the same amount of money that you are discriminating against. That's all. Let's talk about that. That's what the district judge ruled. Well, let's talk about that because I think it is clear. Just to be sure that when Congress looked at this thing, they said the basic difference between the user charges, that's 17 cents a gallon that the trucks are paying, on the right-of-way, and the taxes that the railroads pay with respect to their right-of-way is this. The railroads get nothing for theirs except to pay into the general fund. Right of doing business in Tennessee, I suppose. The highway use, and I'm going to get to that point in just a minute, Judge Griffin, and the highway users get the entire use of the highway system. They may skim money out of the highway fund and use it for general fund purposes. I don't know. They're in highway trust funds. Okay. A lot of trust funds don't use the money for trust. We know the Social Security trust fund is a good example. Okay. So, counsel, let me… Just because it's labeled a trust fund doesn't mean it necessarily goes for that purpose. That's one of the problems I have with the argument. They get the benefit of all their 17 cents? Not necessarily. I can only say, and we have some, we put some reports in the record, the trucking industry is very happy to say increase our taxes as long as it goes to support the roads. Sure. We need that. It goes to mass transit. Michigan, 10 percent of it goes to mass transit, to subways, everything else, not necessarily roads. Counsel, let me go back to what I think you told me in response to my earlier questions. You said looking at the comparator class, it's all of these, I guess, commercial motor carriers or whatever, those moats, you know, buses and trucks and all that. And you said to me, I think, that it's discriminatory when it comes to the railroad because the 17 cents paid by, let's just say the truckers, goes to the highway fund, it builds it up, keeps the roads that trucks run on. And then you said to me, I think, it's discriminatory because the railroads don't use the roads. They have to build their own infrastructure. And so Tennessee doesn't give the railroad anything to keep up the rails, and so that makes it discriminatory. So the railroad is not getting the benefit. They're paying the 17 cents. The truckers have an immediate direct benefit because they're paying for these better roads and they're running their trucks on those roads. Is that what you told me? That's what I told you. Okay. But let's put some flesh on that bone. Do that. If we can. Do that. For a minute, and I'm going to rely on the Norfolk Southern brief because I think that's important. So you get this in some sort of context. Remember, as I said, diesel fuel is the lifeblood of railroad expenses. Burlington Northern Railroad buys 1.4 billion with a B gallons a year. The railroad industry buys 3.5 billion gallons a year. So here's what we have in Tennessee. The trucks pay 17 cents a gallon, and for that 17 cents a gallon, they get to drive on all the highways in Tennessee, and they get to use those highways. Here's what the railroads do. Norfolk Southern in 2013 had truck maintenance expense, just in Tennessee, truck maintenance expense of over $45 million. They had truck maintenance capital expenditure of over $97 million. So in order to keep their roadbed up, they paid $140 million. I see where you're going. What, in your view, would be a fair, non-discriminatory tax for Tennessee to impose on the railroads for their diesel fuel? Well, there are a number of states that do that, Your Honor. What would be the amount? It's not a matter of amounts. I'm asking you the amount. Well, here's what you could do and what many states do. I shouldn't say many, but a number of states do. You could impose on the railroad a generally applicable sales tax and not exempt our competitors from it. The state of New York does that. Oh, so you're saying any tax under diesel would be discriminatory. No, no, I'm not saying that. I'm saying if they want us to pay a tax on diesel fuel, then they can impose a generally applicable sales tax on everybody that uses diesel fuel, and we would pay that. But they can't exempt our competitors from that sales tax and leave the competitors paying only the motor fuel tax. At the same time, there is a new Supreme Court case, the Alabama Department of Revenue v. CXW. Does that impact on this case? I think it has, at least at this stage of the case, very little impact. It was a case involving that very issue about the application of the sales tax on railroads with the exemption. One of the things it does say is that if you impose a sales tax on railroads that you don't impose on the competitors, that is a facial discrimination, and it's up to the state to justify that. That case is going back to the 11th Circuit. How doesn't that help you a whole lot? Pardon me? I thought you said that it doesn't impact this case very much, and now you're telling me it supports your position. No, I'm not saying it supports my position. At this point, at this stage of the case, I don't think, because we didn't come back and brief that matter with the court. The court should be aware of it. But I don't think it really has an impact at this stage of the case. In your view, the district court doesn't need to review that case and reconsider its decision in light of the Alabama Department of Revenue case? I don't think it does. You're the appellant, so you're asking us what you want us to do here. I don't think it needs to review that in light of that case. We think what this court ought to do is remand this case, have them put the preliminary injunction in to preserve the status quo, and then we'll try and brief that case. Okay. Final question is, I think there was some—well, I don't know if there was. Do you agree with me that we review the decision of the lower court on the issue of preliminary injunction for abuse of discretion? Well, you do review on abuse of discretion. I think we cover that in our brief. We say that errors of law constitute abuse of discretion. We also point out in our brief several erroneous factual findings of the court. But, yes, I agree that you do that. Okay. Thank you very much. All right, you'll have your five-minute rebuttal, and no further questions. Good morning. Good morning. May it please the Court. My name is Talmadge Watts with the Tennessee Attorney General's Office representing the Department of Revenue. So I don't forget it. What we want you to do is to affirm the district court and order the injunction pending appeal dissolved. Now that I've got that checked off.  That's the injunction. The escrow deal, is that correct? Yes. That's correct. He denied the preliminary injunction and in deference to this court, I believe, ordered an injunction pending. Well, would we have to order it dissolved? Why wouldn't we just kind of assume he would do it? We would like it dissolved as quickly as possible. All right. Anyway. Thank you. The railroad's main argument is that state expenditures on highways are subsidies to the trucking industry. That's their argument. That means you're deciding the case based only on how proceeds are spent. Now when CSX went to the Supreme Court for the second time, the issue of the use of proceeds was in the brief to the Supreme Court. It came up at oral argument in the Supreme Court. It was spoken about by the 11th Circuit opinion, which was reversed by the Supreme Court. And then Justice Scalia wrote an opinion that didn't utter one word about how proceeds are spent. But he did say, quite remarkably, we think Alabama can justify its exemption for motor carriers by the fuel excise tax placed on motor carriers. So clearly the Supreme Court is not interested in how proceeds are spent. There is a world of case law that says the same thing. The trailer train decision that we've got in our brief, a later decision by the Minnesota Supreme Court, Burlington Northern, it's reported at 606 NW 2nd 54, interprets trailer train the same way we do and says you don't look at the way proceeds are spent under the 4R Act. That case, that Minnesota Supreme Court case, and the dissent in the 11th Circuit case, both get it exactly right. That's what the law should be. They got it right. Now, I want to talk about highways, and I have to be careful about the way I do this because it can almost sound glib. First of all, the first three subsections of the 4R Act, which deal with property taxes. Railroads can't state a claim under the first three subsections by alleging that the state spends every penny of property taxes paid by railroads on highways. They can't state a claim. Here's the part I want to be careful with. The very idea of a civil society without a government-maintained system of public ways is unknown and incomprehensible. There's not a person in the courtroom who could get home tonight without trespassing on private property if we didn't have a system of public ways. We would have roads maintained by the government, whether the trucks drove on them or not. I don't think the railroads find any problems with that. But what counsel says is that the railroad is, I guess, the victim of discrimination because of the way this tax on this huge fuel consumption thing is that they use. And I want to ask you, in the state's argument, to whom do we compare the railroads when we are examining whether or not the impact, I guess, of this, the impact and application of this 4R Act is discriminatory when it comes to the railroads? Who do we compare it to? What's the analysis that we use? And I know we're not deciding the merits here. I understand that. CSX2, the most recent case, is important in this way also because it tells us what the comparative class is when the allegation is that we have a class that targets railroads, treats them different from ordinary businesses in the community. And it's the commercial and industrial class. Well, their biggest competitor in that class is the trucks, and it does exempt the water carriers. But we also know from CSX2 that we compare non-tax-related or non-compensatory tax-related justifications for a difference in treatment for water carriers. So we know we're going to make that comparison. They sent that back to the 11th Circuit on remand to decide that issue. That hasn't been worked out yet in case law. But have I answered your question? I think you're getting there because I also want you ultimately to get to the point that counsel made about the ‑‑ and I know this gets back to use, but that the state collects money and does upkeep for the roads that the trucks use, but the railroad has to maintain its tracks and its infrastructure, and so they're not getting this benefit. Two‑part answer. One, it's perfectly appropriate to use the taxes paid by the trucks on the roads because they do a lot of damage to the roads, and they are essential public commodities, and we have to have them whether the trucks use it or not. Okay? The second part is ‑‑ The railroads have to spend $145 million a week. Yes. Thank you. Thank you. I've read too many cases. The 4R Act was never intended to correct through a system of state taxation inherent in equities between three transportation modes that do business in entirely different ways. The boats are on the rivers. The upside is they don't have to upkeep the rivers. The state doesn't either. The United States Corps of Engineers does that. The downside, of course, is they don't go very fast, and they can only go where the river goes. Another justification for their difference in treatment is sometimes they really don't know what state they're in, although I don't know. GPS may cure that. But there was testimony at the hearings when we took on this new act that it's because of upstream downstream issues with boats and a difference in current speeds because of the difference in rainfalls, et cetera, et cetera. It's really virtually impossible for them to measure their consumption, to measure the tax by consumption. So there are a number of reasons to treat the boats differently. We know we can look at those justifications because it's the SX2. We know from the bulk of the case law that it's irrelevant how we spend the proceeds. Judge Griffin, you're absolutely right. We couldn't build enough courthouses to litigate that if we were going to get into tax benefits, and that's what those cases say. This tax is not targeted at railroads. It is targeted at the consumption of fuel. They say we're the only ones that have to pay a tax on fuel used in locomotives. That's true enough, again, not to be glib. They're also the only ones that pay sales tax on paint used on locomotives. But that doesn't mean the sales tax on paint violates the 4R Act. What they're really doing by making arguments like that is defining themselves as a class of one, in other words, not similarly situated with anyone. Yet under the 4R Act, under CSX1 and CSX2, discrimination is determined by seeing a difference in treatment between similarly situated persons without sufficient justification. If they're not similarly situated with anyone, we don't agree with that. They're just a user of fuel. That's what they really are. But if they're not similarly situated, then the 4R Act really doesn't do them any good. All they've got is equal protection and substantive due process. The other case I would like to bring to your attention is this court's attention in DirecTV v. Treesh because where they're headed is West Linn Creamery, and DirecTV v. Treesh defines the scope of West Linn Creamery. We can look at how a tax is spent in the context of figuring out whether what the state has really done is a disguised protective tariff, and this is certainly not that. CSX2, the Supreme Court case, was decided after the district court opinion here. And after the briefing and this was finished. I ask this question on either side. Is there any reason to remand, to allow the district judge to consider this case? Does it impact the case in such a way that it would be necessary or not? There's no reason to remand it. The only thing to do is affirm it. Judge Sharp knows the history of this case. He decided the Illinois Central case. It went up to this court. That case has now been remanded in light of the new Supreme Court case. But what he knows, and we expect him to change his position on it, but anyway, what we know is in this case, and what was pointed out to Justice Sharp, is the Transportation Fuel Equity Act was not passed in a vacuum. Judge Sharp ruled against us in Illinois Central. He relied on the 11th Circuit opinion, which has now been reversed. We didn't agree. We took appeal under the rules. But the legislature said, we've got to figure out a way how to do this. So we didn't want to take the railroads off of the sales tax. They said we're discriminated against because you treat the trucks differently. And now we say, okay, fine, we'll treat you the same way we treat trucks. I mean, the Fuel Equity Act precisely says, expressly says, all diesel fuel, either cleared or died, used for transportation purposes, with an exception for the boat, is taxed under the diesel tax. The highway user fuel tax that they referred to is not a tax at all. It tells how you calculate the amount of the tax. It's $0.17 per gallon, but it's based totally on consumption, based on miles traveled in the state because of IFTA, the International Fuel Tax Agreement, which the state is authorized to enter into and all states are in it. But there is no similar agreement with trains, and there is no similar agreement with barges. So it's impossible to treat them precisely the same way. And that's why we give railroads a credit, even under the new act, for fuel in which they may have paid sales tax in another state because under the Dormant Commerce Clause, we can't tax it in Tennessee after they've paid sales tax in another state. The Doyle Report came out in 1961. Its primary recommendation was that the Congress pass a federal act that forbids states from taxing railroad and pipeline property. Fifteen years later, with the 4R Act, Congress said, no, you can tax railroad property, but you can't tax it more than 5% more than you tax commercial and industrial property. Also, I would point out that under the new act, 67-6-1407, all of the money paid by the railroads goes into the equity fund, and all of the money paid by the railroads is used on railroads. It's used on track and bridge rehabilitation for the state short-line railroad program. It is true that all the money paid by trucks forms the budget for the Department of Transportation. Judge Griffin, you're also correct, and there's substantial evidence of this in the record that we made in Illinois Central, and also we filed as additional authority in the trial court. It's not in this court. But our expert testified that you just can't, in a matter of government finance, you just can't get into how tax revenues are spent, because that's exactly right. You can call the fund anything you want, and that may have a budgeting purpose, it may have an accounting purpose, it may even have a political purpose, but it has very little, if any, influence on behavior because state legislatures can tax and spend, and they do, and money is fungible, and they can move that around or change it any way they want to from year to year. Obviously, one legislature can't bind a future legislature. Any other particular... Now, the railroads are going to point out, they're going to argue there's a split of authority at least on whether you consider the use of proceeds. If there's a split of authority, I don't see how Judge Sharpe could have abused his discretion because we're not here today to decide the merits, and neither was he. Judge Sharpe looked at this, he had been through the Illinois Central case, and he saw what the railroads were trying to do. They were trying to be the only entity in the state that pays no tax on fuel, the only nongovernmental entity in the state. CSX-1 tells us very clearly that they are not entitled to most favored taxpayer status, and if they're the only ones in the state that doesn't pay any tax on fuel, they're most favored taxpayers. That's what Judge Sharpe's conclusion was based on. He said, no, you can't be most favored taxpayers, and I don't see how you've shown any sort of discrimination here. Now, with CSX-2, we know the comparison class, we know you have to show actual discrimination, and we know you have to compare taxes without consideration of how the proceeds are spent, because that's what they're talking about, the motor fuel tax and just how it's spent. Well, we've got the same tax, and now they want to compare how proceeds are spent. In the Illinois Central case, they wanted to compare how the sales tax proceeds and how the motor fuel tax proceeds were spent. We just can't do that. He did not apply the wrong legal standard. He used the correct comparison class, which was commercial and industrial taxpayers, for a case they say is targeted at railroads, but it is not. It's a tax on the use of fuel. It is not targeted at railroads. It applies to railroads and trucks, their main competitors, people who buy diesel fuel at the pump who aren't big enough to fall under the other parts of the Motor Fuel Act, don't have enough axles, don't weigh enough, etc. But this is an attempt to overcome the discrimination identified by the district court, complained about by the railroads in Illinois Central. This tax can't be used in a vacuum. We're trying to comply with the ruling of the district court in Illinois Central, and now they come in the day before the new tax takes effect, July 1, 2014, on June 30th, they sue us again. No, that's not good enough either. Well, they're not entitled to most favored taxpayer status, and he certainly did not abuse his discretion by ruling that they weren't entitled to that. Can I help the court in anything else? Any further questions? Any questions? I don't think we have any. We'll hear from rebuttal. Thank you very much, Mr. Watts. My light's not red yet, so I feel funny. Don't think you have to use every minute, that's for sure. Brevity is a soul of wit. I don't know whether Mr. Watts ceded any of his time to me or not. I don't think he has. I didn't hear him say he would yield to the gentleman. The gentleman from the railroads. I didn't hear that either. I'll be brief, and I'll follow through. We think this is a targeted tax, and as a targeted tax, sort of implicitly commercial and industrial taxpayers are the class that you would look at. So I want to be sure we understand how this tax works. There is a set of motor fuel taxes in Tennessee that everybody who uses the highway pays, and those people buy clear diesel fuel. Everybody who doesn't use the highway uses dyed diesel fuel, and they don't pay the motor fuel tax. But under this new act that's called the Tax Equity Act, railroads are now taken and put into that group of highway users, and we say you can't put us into a group of people who only use the highway and make us the only non-highway user that pays this highway use tax, which goes to fund the highways. Now, I don't think there's a split of authorities on the question of whether you look at the use to which these funds are put. This is a huge deal, but the state of Tennessee is now saying, look, Mr. Sixth Circuit, we need to be able to make the railroad subject to the highway use tax, and if that's true, we could be subject to the highway use tax in 50 states. The states tried this 30 years ago in Iowa and Minnesota, and in a case that's almost exactly like this case, Iowa imposed an 8 cent a gallon tax on railroad fuel, and it only imposed a 15 and a half cent gallon of tax on the trucks, and the court in that case didn't look at it as a singling out case, that's the Santa Fe Bear case, they didn't look at it as a singling out case, they said we're going to compare them to their competitors, and they say, and it's interesting, superficially, superficially it looks like it's the trucks that are getting discriminated against, because they're paying 15 and a half cents, and the railroads are only paying 8. But they said there's another piece to this puzzle that we've got to look at, and the other piece to this puzzle is that when the trucks pay that 15 and a half cents, they get their highways and they get their roads. The railroads pay 8 cents and they don't get their highways and their roads, and that is a vast difference and that is discriminatory. Almost exactly like this case, almost exactly like this case, Minnesota made the railroad subject to the 17 cent a gallon tax in the triplet case that we cite, and it's in our brief. In that case, the argument of the Department of Revenue of Minnesota is exactly the same as the argument being made here. And they said, not a big deal, everybody pays the 17 cent a gallon who uses fuel. And the district judge in triplet said, I'm going to follow the Iowa Supreme Court case and the rationale there, because the trucks get their highways paid for and maintained and don't have to pay any tax with respect to those, and they drop that tax. To get to the final point, this notion that we don't pay any tax on diesel fuel is also clearly erroneous finding. To the extent the railroad has licensed vehicles that it uses on the highway and it has a lot of them, it pays the diesel fuel tax. To the extent it uses other diesel fuel off highway that it doesn't use for locomotives, it pays significant sales and use tax like other businesses. So this finding that somehow or another we're not paying any tax on diesel fuel, that's just wrong. And quite frankly, we shouldn't pay the highway user tax for operating on the railroad. Technically you're not paying the highway user tax, you're paying the whatever they call the tax that's the rough equivalent to the highway. We're paying under the transportation tax equity fuel tax, but it is under the highway fuel user provision. All the other taxes that are under that are highway taxes. We're the only people that are subject to that provision that are paying highway taxes. Is it part of your argument that besides the trucks paying highway taxes, everybody else does? Who uses the highway? Sure. You and I? Everybody pays highway taxes, who uses the highway, including the railroads. Everybody who uses the highway pays that tax. Your last point, please repeat what the abuse of discretion was by the trial judge. You understand I'm here to protect trial judges. I understand, Your Honor, although I haven't found them needing too much protection in my short practice history. It's twofold and we set it out in our brief. We say number one, he failed to even look at or address the targeting issue, and then there are two erroneous findings that he had with respect to just the last point I made that we didn't pay any tax. We do pay a tax. I think it's also clearly erroneous in the analysis that he made. It is not an analysis of these taxes to say, well, you should be subject to a 17-cent-a-gallon tax because otherwise you won't pay anything. I've never seen that analysis used, and I think it's an abuse of discretion to use that. We thank you, Your Honor. All right, thank you. Anything further? No? All right. Thank you, gentlemen. The case will be submitted.